UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORE PATRICK,<br>Petitioner,<br>v.<br>CHRISTOPHER LAROSE, et al.,<br>Respondents. | Case No.: 26-cv-4670 JAO (BJW)<br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br>(ECF No. 1) |

Before the Court is Dore Patrick's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Also before the Court is Respondents' Return to the Petition, ECF No. 4, and Petitioner's Traverse, ECF No. 5.

For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus on due process grounds.

**BACKGROUND**

Petitioner is a native and citizen of Haiti who entered the United States on May 1, 2024, pursuant to the Haitian humanitarian parole program, and was detained briefly upon entry, but then paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). *See* ECF No. 1 ¶¶ 2–4; ECF No. 1-2. After his release, Petitioner remained at liberty and obtained employment authorization while he pursued asylum relief. *See* ECF No. 1 ¶ 5.

Nevertheless, on August 6, 2026, ICE officers took Petitioner into immigration custody without prior notice or opportunity to be heard and identified no changed circumstances that would justify the revocation of his release. *See id.* ¶ 6. DHS then commenced removal proceedings against Defendant. *See* ECF No. 4 at 2.

**LEGAL STANDARD**

A federal prisoner challenging the execution of her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of her confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

**DISCUSSION**

**I. Jurisdiction**

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g) and § 1252(b)(9). *See* ECF No. 4 at 2–4. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section § 1252(b)(9) meanwhile states that "[j]udicial review of all questions of law and fact. . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Respondents argue that Petitioner's

claims arise from DHS's decision to commence removal proceedings and that the decision to detain Petition is an action taken to remove him such that he would need to proceed via petition for review. *See* ECF No. 4 at 3–4. The Court disagrees.

Here, Petitioner plainly challenges the legality of his detention rather than the merits of his immigration proceedings or the government's decision to commence proceedings. *See* ECF No. 1 ¶ 17; ECF No. 5 at 4. Therefore, neither § 1252(g) nor § 1252(b)(9) strip the Court of jurisdiction. *See Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (explaining that § 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: his 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999))); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding § 1252(b)(9) was not a jurisdictional bar to challenge of detention authority).

**II. Due Process**

Petitioner argues that his summary re-detention without notice or a hearing violates the Due Process Clause. *See* ECF No. 1 ¶¶ 51–56. Respondents do not explicitly address Petitioner's due process argument, instead asserting that Petitioner's parole had expired at the time of his arrest, that he was served with a Notice to Appear that terminated his parole status regardless, and that he was therefore subject to mandatory detention under 8 U.S.C. § 1225. *See* ECF No. 4 at 4–6. The Court concludes that Petitioner's due process rights were violated.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a

hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Id.* (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225, Petitioner is subject to mandatory detention and therefore his alleged statutory and constitutional violations fail. *See* ECF No. 4 at 5 (citing 8 U.S.C. § 1182(d)(5)(A) for the proposition that immigrants temporarily paroled are not admitted). The Court disagrees. Other decisions from this district have previously held that, while a noncitizen may not be deemed admitted in the United States pursuant to § 1182(d)(5)(A), the noncitizen is not necessarily subject to mandatory detention, depending on the length of time they have been in the country. *See e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (finding petitioner who was granted humanitarian parole under § 1182(d)(5)(A) "is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."). Here, Petitioner was granted parole and is not a newly arrived noncitizen seeking admission at the border, as he has been in the United States since May 2024. *See* ECF No. 1 ¶ 53. Further, Respondents' contention—without explanation—that *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), is

"inapplicable to Petitioner," is dubious at best, *see* ECF No. 4 at 6. *See Rodriguez Vasquez*, 183 F.4th at 1165 ("[A]liens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); *id.* at 1172 ("[W]e conclude that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States.").

Regardless, even if Petitioner could be subject to mandatory detention under § 1225, that would not resolve the instant Petition as "many courts in the Ninth Circuit have held that the expiration of parole does not extinguish a petitioner's entitlement to due process." *Aliyev v. LaRose*, 2026 WL 699818, at *2 (S.D. Cal. Mar. 12, 2026) (collecting cases). In other words, a petitioner's private interest does not expire along with their parole agreement. *See*, *e.g.*, *Nayem v. LaRose*, 2026 WL 915023, at *3 (S.D. Cal. Apr. 3, 2026); *Tunaca-Galindo v. Att'y Gen. of United States*, 2026 WL 1229587, at *2 (S.D. Cal. May 5, 2026); *see also Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("[P]etitioner's liberty interest did not expire along with his parole."). The expiration of one's parole "does not somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." *L.M. v. Noem*, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

> Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court concludes that all three factors support a finding that the Government's re-detention of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. From May 2024 to August 2026, Petitioner remained openly at liberty in the United States and thus retained a private interest to be out of custody when "the proceedings [that led to him being granted parole] have created a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees." *Noori*, 807 F. Supp. 3d at 1165. Indeed, Respondents do not directly respond to Petitioner's arguments regarding his protected liberty interest.

Second, the risk of an erroneous deprivation of such interest is high as ICE re-detained Petitioner without providing him a reason for the detention or giving him an opportunity to be heard. ECF No. 1 ¶ 30. While Petitioner was served with a Notice to Appear shortly after his arrest, that alone does not comport with due process because Petitioner was entitled to process *before* he was detained. *See e.g.*, *Tunaca-Galindo*, 2026 WL 1229587, at *1–2. Since DHS's initial determination that Petitioner should be paroled, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that

the noncitizen is in fact dangerous or has become a flight risk[.]" *Id.* Here, Petitioner was detained without warning and "*no procedures* were used to ensure that Petitioner was not erroneously deprived of his liberty interest." *Aliyev*, 2026 WL 699818, at *3.

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents don't even attempt to argue that they have an interest in detaining Petitioner without process. *See generally* ECF No. 4.

Therefore, because Respondents re-detained Petitioner in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) on due process grounds, and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting parole. *See Ramirez Tesara*, 800 F. Supp. 3d at 1138 ("[T]he Court will restore Petitioner to this quasi-supervised status— i.e., following the terms of the parole agreement as if it were still in force—as was the status quo from [the expiration of the petitioner's parole] through his detention.").[1]

---

[1] Petitioner requested attorney's fees, related expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* ECF No. 1 at 13. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order. See 28 U.S.C. § 2412(d)(1)(B).

The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025); *Isaev, v. LaRose, et al.*, 2026 WL 1162758, at *3 (S.D. Cal. Apr. 29, 2026). The Parties are **ORDERED** to file a Joint Status Report by September 14, 2026, confirming that Petitioner has been released. As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: August 31, 2026

Jill A. Otake
United States District Judge